IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PENN MUTUAL LIFE INSURANCE COMPANY, | § § § § § § § § § § § § § | |
| Plaintiff, | | |
| VS. | | Civ. A. H-14-2976 |
| STEVE STEWART and MAGGI STEWART, as co-executors of the ESTATE OF KENT A. Rowald, and RACHEL Rowald, | | |
| Defendants. | | |

**OPINION AND ORDER**

Pending before the Court in the above referenced interpleader action, grounded in diversity jurisdiction and brought pursuant to Federal Rule of Civil Procedure 22(a)(1), addressing conflicting claims to the proceeds of a life insurance policy insuring the life of Kent A. Rowald, are Plaintiff/Interpleader Penn Mutual Life Insurance Company's ("Penn Mutual's") (1) motion to correct judgment (instrument #11) and (2) emergency motion to stay enforcement of writ of execution (#18).

**Factual Background**

The life insurance policy in dispute[1] named as the primary beneficiary Rachel Rowald, wife of Kent A. Rowald (the "Insured") at the time that Penn Mutual issued the policy, and as the contingent beneficiary, the Insured's Estate. Rachel Rowald and Kent Rowald divorced on March 2, 2013, and the marital estate was divided, with Rachel Rowald being awarded one-half of the value of the policy as of the date of Kent Rowald's death, which

---

[1] Life Insurance Policy No. 8530101.

the parties agree was $24,843.22. The Insured, Kent Rowald, died on April 24, 2014, without having changed the beneficiary on the policy.

Both Rachel Rowald and the co-executors made claims on Penn Mutual for the benefits of the policy. Despite the fact that Texas has a divorce revocation statute, Rachel Rowald claimed she was entitled to the proceeds of the policy. If Rachel Rowald was not entitled to the death benefit, the co-executors of the estate of the Insured, Steve Stewart and Maggie Stewart, had a claim to it because the policy did not name an alternative beneficiary. Penn Mutual filed this interpleader action On October 20, 2014, but did not deposit the policy proceeds (the "stake") in the court registry nor post a bond with the court. After this suit was filed, the claiming parties reached an agreement under which Rachel Rowald would receive $24,843.22 (one half of the policy's Net Cash Surrender Value, as defined in the policy, as of March 1, 2013, the date of the divorce); Penn Mutual was to keep $4,551.85 for its attorney's fees in this action; and the remainder, $832,155.40, would be distributed to the co-executors, ultimately to go to Lindsay Rowald, the surviving daughter.

After the agreement among the parties was reached, Penn Mutual calculated that as of January 26, 2015 a total benefit of $832,155.40, which included interest since the date of the Insured's death, (the "January Calculation") was due under the policy. #12, Affid. of Henryk R. Teszner (Manager--Life New Business Administration for Penn Mutual), ¶ 3. On February 12, 2015, the Court entered the Agreed Final Judgment (#10) ordering

Penn Mutual to pay and withhold, within 30 days of the entry, the amounts indicated in that January Calculation. Subsequently in preparing to make those payments, Penn Mutual realized that the January Calculation was not correct because Penn Mutual had used the wrong interest rate, i.e., 18% instead of 4%. #12, Affid. of Rebecca A. Muff (attorney for Penn Mutual in this matter), ¶¶ 4-5, and Affid. of Teszner. ¶ 4. Applying a 4% interest rate, Penn Mutual found that the total amount due on the policy, including interest, was $782,713.36. The Final Judgment erroneously ordered Penn Mutual to pay the Rowald Estate $49,442.04 more than it should have under the correct calculation, according to Penn Mutual. The correct payment to the Estate would be $753,318.29. The amount owed to Rachel Rowald remained the same, and Penn Mutual has paid that sum to her.

The Rowald Estate has refused to allow Penn Mutual to correct the error, so on March 6, 2015, Penn Mutual moved to correct the judgment under Fed. R. Civ. P. 60. Moreover, on September 2, 2015, despite the pending Rule 60 motion to correct judgment, the Rowald Estate moved for and obtained a writ of execution to enforce the Agreed Final Judgment, causing Penn Mutual to file its emergency motion to stay.

### Penn Mutual's Motion to Correct Judgment (#11)

Insisting it made a mathematical mistake in calculating the interest rate and providing the allocations that the parties had intended, Penn Mutual argues that Federal Rule of Civil Procedure 60(a) allows the Court to correct clerical orders in a final judgment caused by mistake, oversight or omission, whether

made by the parties, the court, or the clerk of the court. Fed. R. Civ. P. 60(a)("The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such mistake may be corrected only with the appellate court's leave.").; *In re West Texas Marketing Corp.*, 12 F.3d 497, 503-04 (5th Cir. 1994)("Rule 60(a) finds application where the record makes apparent that the court intended one thing but by merely clerical mistake or oversight did another. Such a mistake must not be one of judgment or even of misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature . . . ."), quoting *Dura-Wood Treating Co., Division of Roy O. Martin Lumber Co. v. Century Forest Industries, Inc.*, 694 F.2d 112, 114 (5th Cir. 1982)(Scope of Rule 60(a) is very limited). Therefore, "it is proper to use Rule 60(a) to correct a damages award that is incorrect because it is based on an erroneous mathematical computation . . . . Correction of an error of 'substantive judgment,' therefore, is outside the reach of Rule 60(a). *Id.* "As long as the intentions of the parties are clearly defined and all the court need do is employ the judicial eraser to obliterate a mechanical or mathematical mistake, the modification will be allowed." *Id.* at 504-05. "[T]he relevant test for the applicability of Rule 60(a) is whether the change affects substantive rights of the parties . . . . or instead a clerical error, a copying or computational mistake,

which is correctable under the Rule." *Id.* at 504; *in accord, U.S. v. Mackay*, 757 F.3d 195, 199 (5th Cir. 2014).

Alternatively, urges Penn Mutual, if the Court finds Rule 60(a) inapplicable because the error is not clerical, but affects the parties' substantive rights, it may grant relief under Rule 60(b) for "mistake, inadvertence, surprise of excusable neglect."

Penn Mutual maintains that correcting the error would serve the interests of justice because compelling it to pay almost $50,000 more than it actually owes would unjustly penalize it for an innocent error and provide an undeserved windfall to the co-executors.

### Co-Executors' Response (#13)

The Claimant Co-executors' response in opposition (#13), joined by Claimant Rachel Rowald (#16), to the motion to correct judgment first argues that the Court lacks jurisdiction to correct the judgment as Penn Mutual did not comply with jurisdictional requirements under Fed. R. Civ. P. 22(b) [2] and 28 U.S.C. § 1335,[3]

---

[2] Rule 22(b) provides, "The remedy this rule provides is in addition to--and does not supersede or limit--the remedy provided by 28 U.S.C. §[] 1335 . . . ."

[3] In relevant part § 1335 provides,

> (a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery

specifically Penn Mutual failed to deposit the money into the registry of the court or post a bond payable to the Clerk of the Court. *Gelfgren v. Republic Nat'l Life Ins. Co.*, 680 F.2d 79, 81-82 (9th Cir. 1982)(holding that "[d]eposit of disputed funds in the court's registry is a jurisdictional requirement to statutory interpleader under 28 U.S.C. § 1335").

The Court rejects this argument. Claimants ignore the fact that the Ninth Circuit in *Gelfgren*, 680 F.2d at 82, goes on to state, "However a deposit is not a jurisdictional requirement to rule 22(1) interpleader," and cites *Murphy v. Travelers Insurance Co.*, 534 F.2d 1155 (5th Cir. 1976). In *Murphy*, *id.* at

---

> or payment or the loan of money or property of such amount or value, as being under any obligation written or unwritten to the amount of $500 or more, if
>
> > (1) Two or more adverse claimants of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.

1159, the Fifth Circuit wrote about the case before it in which the same jurisdictional challenge as here was raised,

> [A]lthough the interpleader claim in the instant suit was predicated on 28 U.S.C. § 1335, it appears that interpleader is also permissible under Rul 22. Fed. R. Civ. P. Rule 22 interpleader does not require a "deposit"; and it is clear that the requisite diversity of citizenship and jurisdictional amount is present in the instant suit.

In the instant action, Penn Mutual's complaint (#1 at ¶ 4) clearly indicates in it is not brought under 28 U.S.C. § 1335, but under Rule 22 and 28 U.S.C. § 1332:

> This is a Complaint in Interpleader brought by Penn Mutual pursuant to Federal Rule of Civil Procedure 22. Rule 22 interpleader is proper because the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as Penn Mutual is a citizen of Pennsylvania, whereas the competing claimants are citizens of Texas. Furthermore, the proceeds of the insurance contract at issue exceed $75,000.

Moreover the Court notes that in an interpleader under Rule 22 and 28 U.S.C. § 1332, complete diversity of citizenship is satisfied when the stakeholder is diverse from all the claimants, even if the citizenship of the claimants is not diverse. Such is the case here, with Penn Mutual organized under the rules of Pennsylvania, where it also has its principal place of business, while the Claimants are all domiciled in Texas. In a statutory interpleader under 28 U.S.C. § 1335(a)(1), in contrast jurisdiction is based on "minimal diversity," i.e., diversity between two or among more than claimants, instead of between the stakeholder plaintiff and the defendant claimants. *State Farm Fire & Cas. Co. v. Tasjore*, 386 U.S. 523 (1967); *In re Enron Corp.*

*Securities, Derivative & "ERISA" Litig.*, 391 F. Supp. 2d 541, 560 (S.D. Tex. 2005). Thus since the claimants here are all citizens of Pennsylvania they could only qualify for interpleader under Rule 22 and § 1332.

The Claimants' second argument is that the signed agreed judgment reflects the intentions of the parties, but they then go on to state that the "evidence does not show what the intention of the parties was" and that "the evidence offered by the insurance company to seek to overturn this Agreed Judgment does not reflect that the correct judgment should be *based upon the intention of the parties.*" #13, p. 7. If a mistake was made, and Claimants do not concede one was, it was made only by Penn Mutual, who they had agreed should perform the interest calculation. They maintain that "there has been no showing that the alleged error was 'only mindless and mechanistic' as required under *West Texas, at 505,* to support the Court's revision of an agreed judgment which correctly indicated the intentions of the parties and counsel." #13 at p. 8.

This Court finds that the error in calculating the interest was a clerical error. In diversity jurisdiction cases, the interest rate for prejudgment interest is governed by state law, here by Texas law. *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421 (5th Cir. 2003), citing *Harris v. Mickel*, 15 F.3d 428, 429 (5th Cir. 1994), and *Adams v. H&H Meat Prods., Inc.*, 41 S.W. 3d 762, 780 (Tex. App.--Corpus Christi 2001, no pet.). That the parties had intended to award prejudgment interest is obvious in the inclusion of prejudgment interest in the Agreed Final

Judgment. *See, e.g., Newburger, Loeb & Co., Inc. v. Gross*, 611 F.2d 423, 432 (2d Cir. 1979)(allowing correction of interest rate), *cert. denied*, 434 U.S. (1978).

Penn Mutual contends that the agreed judgment erroneously used the prejudgment interest rate of 18%, Texas Insurance Code § 542.060, a statute drafted to penalize an insurance company if it fails to settle claims within the period set out by Texas Insurance Code § 1101.011.

Texas Insurance Code § 1101.011, addressing the time for settlement of claims, states in relevant part,

> (a) Except as provided by Subsection (b), a life insurance policy must provide that settlement under the policy after the death of the insured will be made not later than two months after the date of receipt of proof of:
> (1) the death; and
> (2) the right of the claimant to the proceeds of the policy.

Section 1103.104, "Interest on Proceeds," subsection (c) states, "The interest rate under this section is the rate provided in the policy or, if a rate is not provided in the policy, the rate at which interest accrues on proceeds that are left on deposit with the company." The policy in dispute does not state a prejudgment interest rate.

Chapter 542 of the Texas Insurance Code is popularly known at the Prompt Pay Statute. Section 542.058(a), addressing "Delay in Payment of Claim," provides,

> Except as otherwise provided, if an insurer, after receiving all items, statements and forms reasonably requested and required under Section 542.055, delays payment of the claim for a period exceeding the period specified

> by other applicable statutes, or, if other statues do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060.

In 2009, subsection (c) was added to § 542.058 and provides,

> (c) A life insurer that receives notice of an adverse, bona fide claim to all or part of the proceeds of the policy before the applicable payment deadline under Subsection (a) shall pay the claim or properly file an interpleader action and tender the benefits into the registry of the court[4] not later than the 90th day after the date the insurer receives all items, statements and forms reasonably requested and required under Section 542.055. A life insurer that delays payment of the claim or the filing of an interpleader and tender of policy proceeds for more than 90 days shall pay damages and other items as provided by Section 542.060 until the claim is paid or an interpleader is properly filed.

Section 542.060 ("Liability for Violation of Subchapter") is a penalty for violation of Chapter 542. *See, e.g., State Farm Life Ins. Co. v. Martinez*, 216 S.W. 3d 799, 804-06 (Tex. 2007)("Prompt Payment statute applied to insurer's delay before filing interpleader action" which then "sufficed in place

---

[4] To "tender" the benefits does not mean to "deposit" them, but is defined as "a valid and sufficient offer of performance; . . . an unconditional offer of money or performance to satisfy a debt or obligation." *Prudential Ins. Co. of America v. Durante*, No. 14-0944, 2014 WL 7403432, at *10 (Tex. Dec. 29, 2014), citing *Black's Law Dictionary* 1601 (9th ed. 2009). "Once an insurer makes an 'unconditional offer to give up possession of a disputed fund' by way of an interpleader action, the insurer ceases to exert dominion over the money." *Id.*, citing *Village Contractors, Inc. v. Trading Fair IV, Inc.*, No. H-09-2701, 2011 WL 2693386, at *7 (S.D. Tex. July 11, 2011). Thus "once such an unconditional tender is made, any liability for interest ceases as of the date of tender." *Id.*, quoting *Phillips Petroleum Co. v. Adams*, 513 F.2d 355, 370 (5th Cir. 1975). Thus Claimants' contention that Penn Mutual did not actually place the benefit funds into the registry lacks merit.

of payment")); *Phillips Petroleum Co. v. Adams*, 513 F.2d 355, 369-70 (5th Cir. 19750)(same); *Arete Partners, LP v. Gunnerman*, 643 F.3d 340, 416 & n.6 (5 [th] Cir. 2011); *Prudential Ins. Co. v. Durante*, 443 S.W. 3d 499, 511-12 (Tex. App.--El Paso 2014). Section 542.060 states in relevant part,

> (a) If an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at a rate of 18 percent a year as damages, together with reasonable attorney's fees.

*See also* 46A Tex. Jur. 3d Insurance Contracts and Coverage § 1057 (database updated Oct. 2015)("A life insurer that delays payment of the claim or the filing of an interpleader and tender of policy proceeds for more than 90 days must pay the beneficiary, in addition to the amount of the claim, interest on the amount of th claim at the rate of 18% a year as damages, together with reasonable attorney's fees, until the claim is paid or an interpleader is properly filed.").

The key facts here are that Kent Rowald died on April 24, 2014. His will was probated, the Stewarts were named co-executors of his estate, and the will provided that after collection of all property and payment of all claims, the remaining property was to go to his daughter, Lindsay Rowald. Then on August 29, 2014 Rachel Rowald filed a claim for the benefits of the life insurance policy with Penn Mutual on August 29, 2014. Penn Mutual filed this interpleader action on October 20, 2014. As Claimants, themselves, state, Penn Mutual did not

deposit the policy proceeds in the Court's registry nor post a bond; instead "Counsel for each of the parties agreed that Penn Mutual would calculate the value of Rachel Rowald's claim . . ., provide the calculated number to all counsel, and if agreed, the parties would file an Agreed Final Judgment resolving the case." #13 at p.2. That plan was followed, the parties subsequently agreed to some changes to the proposed judgment, and then the Agreed Final Judgment was entered by the Court on February 12, 2014. *Id.* Furthermore, the Agreed Final Judgment (#10 at ¶1), which did not identify the specific percentage interest rate applied, but merely the total lump sum to be paid, expressly and specifically states, "Penn Mutual did not unreasonably delay the filing of its action for interpleader and unconditionally offered to deposit the proceeds of the life insurance policy at issue." Because the record shows, and the parties agreed, that Penn Mutual acted in a timely manner with regard to the claimants' claims, Section 542.060's penalty 18% prejudgment interest rate should not apply in the interests of justice. The Court finds that the statutory penalty rate was used in error here and the prejudgment interest awarded should be the interest that actually accrued on the death benefits of the policy. Thus under § 542.058(c) Penn Mutual met the time requirements and should not be subject to the penalty of § 542.060.

Penn Mutual's Death Benefit Request Form, #1-4, Exh. C, signed by Rachel L. Rowald, who selected as the method of payment of benefits to her a "Lump Sum Payment" out of the "Settlement Options Available for Distribution of Claims Proceeds," included

-12-

the statement, "The interest rate earned on the Beneficiary Account will equal or exceed the national average for bank money market accounts as measured by the Bank Rate Monitor National Index."

Claimants also conclusorily charge that the affidavits of Rebecca Huff and Henryk E. Teszner (both in #12) are inadmissible and not based on personal knowledge. Huff, attorney for Penn Mutual, clearly would have personal knowledge of the agreed judgment reached by the parties and its terms. She further states that she requested that Penn Mutual calculate the total amount due, that as of January 26, 2015 Penn Mutual made a calculation of $832,155.40 (the January Calculation) as the amount due and provided it to Huff, and that she then used the January Calculation to determine the amounts payable in the proposed Agreed Final Judgment. Hearsay does not apply to actions that she performed or personally witnessed. The only hearsay in her affidavit is her final statement that after the Agreed Final Judgment was entered on February 12, 2014, she "was informed by Penn Mutual that the January Calculation was incorrect." On the other hand, Teszner states in his affidavit that he is the Manager--Life New Business Administration for Penn Mutual and that the facts he presents regarding the miscalculation of the interest rate "are within my personal knowledge." He does not state how either through his position or otherwise he learned of them, so the Court cannot determine whether the affidavit is hearsay.

In *Arete Partners* 643 F.3d at 415, the Fifth Circuit opined,

> [U]nder Texas law, whether entitlement to prejudgment interest is derived from statute or, as in this case, equity, "prejudgment interest accrues at the rate for post judgment interest and [is] computed as simple interest." In relevant part, the applicable statute sets postjudgment interest at either "the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation," or "five percent a year if the prime rate as published by the Board of Governors . . . is less than five percent." Tex. Fin. Code Ann. § 304.003(c)(1)-(2). This provision sets a 'floor interest rate' of five percent on postjudgment interest." *Id.*, citing *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W. 2d 507, 532 (Tex. 1998).

The Court does agree with Claimants that Penn Mutual must explain why it argues that the correct prejudgment interest rate is 4% and provides authority supporting that choice. If the parties then do not agree on a new final judgment, the case will be reinstated on the Court's active docket.

The Court agrees with Penn Mutual that Rule 62(b) permits the Court to stay execution of the Agreed Final Judgment in light of Penn Mutual's motion for relief under Rule 60.

Accordingly the Court

ORDERS that Penn Mutual's (1) motion to correct judgment (instrument #11) and (2) emergency motion to stay enforcement of writ of execution (#18) are GRANTED. Moreover, the Court VACATES the Agreed Final Judgment (#10), thus mooting the writ of execution. The Court further

ORDERS that Penn Mutual shall file within twenty days a brief explaining its proposed prejudgment interest rate with

supporting authority.  Claimants shall file a timely response.  If the parties can settle their dispute again, they may submit a new Agreed Final Judgment; otherwise they shall inform the Court that they cannot agree on the disposition of this case, and the Court will establish a new docket control schedule.

**SIGNED** at Houston, Texas, this  2nd  day of  October , 2015.

                                                MELINDA HARMON
                                      UNITED STATES DISTRICT JUDGE